## Baystate Moving Systems, Inc. *v.* Peter C. Bowman et al.
### (8961)

Daly, O'Connell and Foti, Js.

Argued December 13, 1990—decision released May 7, 1991

*John J. Quinn,* for the appellant (plaintiff).

*Paul T. Nowosadko,* with whom were *Louis B. Blumenfeld* and, on the brief, *Lorinda S. Coon,* for the appellees (named defendant et al.).

FOTI, J. The plaintiff intervenor in this personal injury action, Michael Dupont, appeals from the judgment in the amount of $10,500 that was rendered in his favor after a jury trial. The plaintiff claims that the trial court improperly (1) allowed the defendants to offer evidence of workers' compensation benefits in violation of the collateral source rule, (2) did not permit the plaintiff to testify as a rebuttal witness to rehabilitate his own credibility, (3) did not permit Jonathan Reik to testify as a witness, and (4) charged the jury regarding the plaintiff's duty to mitigate damages. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. The plaintiff Michael Dupont was employed by Baystate Moving Systems, Inc. (Baystate), as a packer. On September 14, 1984, the plaintiff was driving a truck owned by Baystate in the performance of his duties when the truck was struck from the rear by a vehicle operated by the defendant Garry S. Krutka. Krutka's vehicle had been struck from behind by a pickup truck that was operated by the defendant Peter C. Bowman and owned by the defendant Peter E. Bowman. The plaintiff was injured in the accident and was treated by several physicians. The plain-

tiff never returned to work at Baystate, and made a claim for workers' compensation benefits. The plaintiff received benefits totaling over $20,000.

Baystate commenced this action pursuant to General Statutes § 31-293 in August, 1986, to recover previous payments. Dupont intervened by motion and joined the action as a coplaintiff. In 1988, Baystate withdrew its complaint, and the plaintiff continued to litigate the matter. This case was tried in January and February, 1990, to a jury that returned verdicts on February 2, 1990. The jury found the issues for the defendant Garry Krutka, and for the plaintiff as against the defendants Peter C. Bowman and Peter E. Bowman. The jury found damages of $10,500. The court accepted the verdicts and judgment was rendered. The plaintiff appeals from the judgment in his favor against Peter C. Bowman and Peter E. Bowman.

The plaintiff's first claim is that the trial court improperly permitted the defendants to introduce evidence of the plaintiff's receipt of workers' compensation benefits in violation of the collateral source rule. The plaintiff objected to the following question: "Also during the year 1985, did you receive benefits from workers' compensation?" This question was asked during the defendants' cross-examination of the plaintiff regarding his past financial condition. This line of questioning seems to have been calculated to educe testimony from the plaintiff that was inconsistent with statements he had made during direct examination, and thereby to impeach his credibility. The plaintiff argues that this question violated the collateral source rule even if it was offered to impeach his credibility rather than as substantive evidence of a collateral source.

" 'The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source.' " *Rametta* v. *Stella,* 214

Conn. 484, 489–90, 527 A.2d 978 (1990), quoting *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 101–102, 285 A.2d 330 (1971), cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663 (1972); *Regan* v. *New York & New England R.R. Co.,* 60 Conn. 124, 130, 22 A. 503 (1891).

Ordinarily, the fact that the plaintiff has received benefits from a third party would be irrelevant and inadmissible under the collateral source rule. *Acampora* v. *Ledewitz,* 159 Conn. 377, 384, 269 A.2d 288 (1970). Here, however, testimony that would otherwise have been irrelevant and inadmissible under the collateral source rule became relevant because of the plaintiff's prior statements. The plaintiff testified on direct examination concerning the gravity of his financial situation in 1985.[1] Evidence that he had received substantial

[1] The following excerpts from the transcript contain the plaintiff's testimony regarding his financial condition in 1985 that was elicited on direct examination:

"[The Plaintiff] A. May 8th—I believe that was the last time I saw Miller. He had suggested a pain clinic in Holyoke, Providence Hospital. He had exhausted everything to do. Except medication, continue on the home traction unit. In July I saw Dr. Bye, who was the one who performed the myelogram. He told me, 'I tried everything I can.' He suggested Spaulding Pain Clinic in Boston.

"[Plaintiff's Counsel] Q. Did you attend either Spaulding Pain Clinic or the Providence Hospital Pain Clinic?

"A. No. I couldn't afford it.

"Q. You had no money?

"A. I was broke.

"Q. What did you do?

"A. 1983, my wife had become a realtor. There was no money coming in. I was not working. I was staying home with the kids while she was starting her own business.

"Q. Are there any changes in your family structure during this time period of '84, '85?

"A. Yes. It was a very stressful, rough time for us. We were broke and she tried to go out on her own.

"Q. And you are not working?

"A. No, sir.

"Q. And your wife has become a real estate broker?

workers' compensation benefits during this period is certainly relevant to the issue of the plaintiff's credibility.

Our Supreme Court has held that when evidence of income from a collateral source is relevant to the issue of the credibility of a witness it shall be admissible for that purpose. Id. Indeed, that court stated that "it was reversible error not to have allowed the defendants to have pursued the matter on cross-examination." Id.

The plaintiff argues that this case can be distinguished from *Acampora* because the controverted testimony in this case was educed from the plaintiff, whereas in *Acampora* it was educed from a third party witness. We see no reason why this difference should change the outcome, and find the plaintiff's argument unpersuasive.

The plaintiff further argues that the trial court did not properly balance the probative value of the testimony regarding the issue of credibility against the potential prejudice that could arise from improper use of the testimony by the jury. The plaintiff maintains that if the court had engaged in the proper balancing of these concerns the evidence would not have been admitted. We disagree.

"As to the prejudicial effect of the testimony, the trial judge, in the exercise of judicial discretion, must decide whether the probative value of the testimony outweighs the prejudice likely to result from its admission. *State v. Ralls,* 167 Conn. 408, 417, 356 A.2d 147 [1974]; *State v. Moynahan,* 164 Conn. 560, 597, 325 A.2d 199[, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]." *State v. Martin,* 170 Conn. 161, 166, 365 A.2d

"A. Correct.

"Q. Did this change your life in any way?

"A. Like I say, I had no money left. When she opened the doors in April . . . ."

104 (1976). The determination of relevance, moreover, must be made according to reason and judicial experience. *Robinson* v. *Faulkner,* 163 Conn. 365, 371, 306 A.2d 857 (1972). This determination requires the exercise of the court's discretion. *State* v. *Blyden,* 165 Conn. 522, 531, 338 A.2d 484 (1973).

The principles by which we judge the propriety of the trial court's ruling on the relevance of evidence educed on cross-examination are well settled. The scope of cross-examination is a matter properly left to the sound discretion of the trial court. *State* v. *Ghere,* 201 Conn. 289, 303, 513 A.2d 1226 (1986); *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). " 'Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' " *State* v. *Ghere,* supra, quoting *State* v. *Briggs,* supra.

Applying this limited standard of review to this case in light of our Supreme Court's holding in *Acampora,* we do not find that the trial court abused its discretion in any way by admitting evidence of the plaintiff's workers' compensation benefits to impeach his credibility.

The plaintiff's second claim is that the trial court improperly denied him the opportunity to be recalled as a witness to rebut the defendants' attack on his credibility. The plaintiff argues that after the defendants' cross-examination elicited evidence of workers' compensation benefits that impeached his credibility, he should have been permitted to be recalled as a witness.

After the defendants' cross-examination, the plaintiff was given a full and fair opportunity for redirect examination to probe the issues raised on cross-examination. The plaintiff conducted brief redirect

examination that did not touch on the issue of the workers' compensation benefits. Later, the court denied the plaintiff's request to be recalled as a witness. It was the denial of this request to be recalled that the plaintiff challenges.

"The trial court has broad discretion in determining whether to permit a witness to be recalled." *State* v. *Arroyo,* 13 Conn. App. 687, 692, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988); see *State* v. *Vandemark,* 77 Conn. 201, 206, 58 A. 715 (1904). In this case, the trial court chose not to permit the plaintiff to be recalled to address the issue of workers' compensation benefits after the plaintiff neglected to address this issue on redirect examination. We cannot say that the plaintiff has shown that the trial court abused its discretion in refusing to permit him to be recalled to offer direct testimony to rehabilitate his credibility after he had chosen not to address that issue during prior redirect examination.

The plaintiff further argues that he should have been permitted to testify as a rebuttal witness to rehabilitate his credibility. We disagree.

"The trial court is vested with considerable discretion in the matter of rebuttal evidence." *State* v. *Wood,* 208 Conn. 125, 139, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982). Ideally, rebuttal evidence refutes evidence presented as part of the defendant's case-in-chief. See *State* v. *Wood,* supra; *DiMaio* v. *Panico,* 115 Conn. 295, 298–99, 161 A. 238 (1932); *Hathaway* v. *Hemingway,* 20 Conn. 191, 195 (1850).

We cannot say that the trial court abused its discretion in this case by limiting the plaintiff's rebuttal testimony to issues raised in the defendants' case-in-chief

when the plaintiff had a full and fair opportunity to address these issues during redirect examination.

The plaintiff's next claim is that the trial court improperly excluded the testimony of Jonathan Reik. The plaintiff offered Reik's testimony to challenge the evidence of workers' compensation benefits and thereby to rehabilitate the plaintiff's credibility. The plaintiff argues that the trial court's refusal to admit Reik's testimony constituted an abuse of discretion sufficient to require a new trial. We do not agree.

The plaintiff must show an abuse of discretion and resulting prejudice in order to succeed on this claim, just as he did with the other issues of relevancy and admissibility that he has raised in this appeal. See *State v. Quinones,* 21 Conn. App. 506, 513–14, 574 A.2d 1308 (1990). The plaintiff seeks to make this showing by asserting that the defendants raised the issue of workers' compensation benefits during cross-examination and arguing that, because the issue was raised, the plaintiff was entitled to address it through Reik's testimony.

Although the first part of the plaintiff's argument is correct, his conclusion does not persuade us. The defendants did raise the issue of workers' compensation benefits during cross-examination. This gave the plaintiff the right to develop the issue further on redirect examination of the plaintiff. It did not give the plaintiff an unqualified right to call Reik to testify regarding this issue. Reik's testimony was extrinsic evidence of a collateral issue and was properly excluded by the trial court.

The defendants offered evidence of the plaintiff's receipt of workers' compensation benefits solely for the purpose of impeaching the plaintiff's credibility. The plaintiff had the right and the opportunity to address this issue through redirect examination. Because credi-

bility is a collateral matter, the trial court did not have to admit Reik's testimony. See *State* v. *Wilson,* 158 Conn. 321, 324, 260 A.2d 571 (1969); *Barlow Bros. Co.* v. *Parsons,* 73 Conn. 696, 702, 49 A. 205 (1901).

The plaintiff's final claim is that the trial court improperly instructed the jury regarding his duty to mitigate damages. The plaintiff alleges that the trial court's charge to the jury on this issue did not comply with the requirements outlined in *Preston* v. *Keith,* 20 Conn. App. 656, 662–63, 570 A.2d 214 (1990), rev'd in part, 217 Conn. 12, 584 A.2d 439 (1991). The plaintiff argues that he was prejudiced by the faulty instructions on two issues. Specifically, the plaintiff cites the trial court's omission of the issues of proximate cause[2] and burden of proof from its charge on mitigation of damages,[3] and claims that these omissions adversely

---

[2] Upon its review of *Preston* v. *Keith,* 20 Conn. App. 656, 570 A.2d 214 (1990), our Supreme Court decided that the trial court was not required to instruct the jury on the relationship between proximate cause and mitigation of damages. *Preston* v. *Keith,* 217 Conn. 12, 584 A.2d 439 (1991). This holding reversed the precedent relied on by the plaintiff, and requires him to show that the trial court abused its discretion in omitting a proximate cause on instruction from the charge on the plaintiff's duty to mitigate damages.

[3] The pertinent part of the trial court's instruction regarding the duty to mitigate damages is as follows: "One who is injured in an accident has a duty to mitigate damages. In other words, one who claims to have been injured by the negligence of another must use reasonable care to promote recovery and prevent any unnecessary increase of damages, including medical expenses and loss of earnings.

"This rule is one of good faith and reasonable conduct. The requirement is met when the plaintiff does what a reasonably prudent person would be expected to do under the same circumstances. The test of good faith and reasonable conduct must be applied under all of the conditions surrounding the plaintiff at that time. That is the rule.

"If you find that the plaintiff in this action acted in good faith, resorted to such means and adopted such methods as were reasonably within his reach in order to make his damages as small as possible, then you won't have to consider the question of whether the damages should be dismissed.

"If on the other hand you find he fell short of that, then he did not act in good faith and did not resort to such means and adopt such methods

affected the jury's determination of the length of his disability and the amount of medical damages for which the defendants were liable. He contends, therefore, that a new hearing on the issue of damages is necessary.

Although we agree that the trial court's charge on mitigation of damages was inadequate, we need not remand for a new hearing because any error in the trial court's charge was harmless. Any flaw in the jury instructions could not have prejudiced the plaintiff because the specific issues involved were properly issues of proximate cause for the plaintiff to prove, rather than true issues of mitigation of damages.

The only issues identified by either the parties or the trial court as related to the plaintiff's duty to mitigate damages are (1) what portion of the plaintiff's unemployment is attributable to his disability, and (2) whether the defendants should be liable for the plaintiff's chiropractor bills. These are issues of damages for the plaintiff to prove in his prima facie case, rather than issues by which the defendants seek exoneration from responsibility resulting from the plaintiff's failure to act in good faith to avoid aggravation of the original injury. Cf. *Morro* v. *Brockett,* 109 Conn. 87, 93–94, 145 A. 659 (1929); *Preston* v. *Keith,* supra, 20 Conn. App. 662.

"It is axiomatic that the initial burden of proving and establishing that the defendant's negligence was the proximate cause of claimed injuries lies with the plaintiff." *Preston* v. *Keith,* supra, 20 Conn. App. 664; see

reasonably within reach to make his damages as small as possible. Then you are to take off the damages. Otherwise, you would award to him such sum you think fairly represents the amount to which his damage was increased by his failure of his duty in this respect.

"There is, as I recall, and again it's for you to recall, there is evidence from which you might [conclude] if you accept that evidence that the plaintiff could have resumed employment at an earlier date than he did. I believe that testimony came in with Dr. Dowling."

*Wu* v. *Fairfield,* 204 Conn. 435, 438, 528 A.2d 364 (1987). In *Preston* v. *Keith,* supra, 20 Conn. App. 664, this court held that the burden of proof shifted to the defendant when the defendant claimed that "the injured party failed to take reasonable action to lessen the damages . . . ." In this case, however, although the trial court referred to certain issues during its charge on the plaintiff's duty to mitigate damages, these issues did not involve allegations that the plaintiff failed to exercise good faith in reducing damages. Compare *Preston* v. *Keith,* supra, 20 Conn. App. 659 (the plaintiff failed to comply with treating therapist's recommendations). Both the issue of the duration of the plaintiff's disability and the issue of the defendants' liability for the plaintiff's chiropractor bills address the limits of the causation element of the plaintiff's prima facie case.

The trial court's charge, therefore, although flawed in its explanation of the plaintiff's duty to mitigate damages, did not prejudice the plaintiff because none of the issues was properly encompassed by that duty.

The judgment is affirmed.

In this opinion the other judges concurred.